Patrick J. Picariello, J.
The complaint in this case alleges three causes of action against each of the defendants. Defendant Town and Country Dance Club, Inc., having defaulted, the court will concern itself only with the ultimate liability of the defendant Arthur Murray, Inc.
*418 Plaintiff seeks to recover from this defendant the entire consideration paid by her on contracts entered into with New York Dance, Inc.
The causes of action against this defendant are similar in nature and involve like questions of law and fact with the exception that each is predicated upon a separate contract.
Plaintiff seeks to cast this defendant in liability on the admitted franchisor-franchisee relationship existing between it and New York Dance, Inc., at the time the contracts were entered into. She invokes sections 394-b and 394-c of the General Business Law, claiming that said contracts are void under the provisions of the former section and further claiming that the provisions of the latter section give her a cause of action ag’ainst this defendant.
Paraphrased, section 394-b of the General Business Law provides that contracts in excess of $500 for instruction in physical or social skills be for precisely measured period of years and requires that payments under such contracts be in installments so computed that total amounts so paid shall not exceed by more than 5% prorated costs of units of instruction actually received at time latest payment is made or, if no definite number of units of instruction is specified in contract, that total amount so paid shall not exceed by more than 5% proportion of total contract price that expired portion of entire term hears to whole term of contract.
The terms and conditions of the three subject contracts are as follows:
(1) Contract dated April 21, 1967, which provides that “ student agrees to take and studio agrees to teach student 105 hours of dancing during the next-months at a cost of $1890.00. Student agrees to pay the studio $20.00 on account upon the execution thereof, and the balance of $1870.00 as follows: $1890.00 on or before April 27, 1967.” Payment thereon was made by check dated May 10,1967, in the sum of $1870.00 payable to the order of Arthur Murray Studios.
(2) Contract dated June 2, 1967, which provides “ student agrees to take and studio agrees to teach student Tiffany Club during the next-months at a cost of $4125.00. Student agrees to pay the studio $4125.00 on account, upon the execution hereof, and the balance of $- as follows:: — ”. Payment thereon was made by two checks dated June 14, 1967, and June 21, 1967, in the respective sums of $300 and $3825. Both of these checks were made payable to the order of New York Dance, Inc.
(3) Contract dated November 11, 1967, which provides that “ student agrees to take and studio agrees to teach student 74 *419 hours of dancing during the next-months at a cost of $1442.70. Student agrees to pay the studio $1000 on account, upon the execution hereof, and the balance of $442.70 as follows: — .” Payment thereon was made by two checks dated November 28, 1967, and December 6, 1967, in the respective sums of $1000 and $442.70.
Defendant Arthur Murray, Inc., puts in issue (1) the construction to be given to section 394-b of the General Business Law; (2) the nature of the remedy available to plaintiff; (3) plaintiff’s right to recover on the record in this case; and (4) this defendant’s liability to the plaintiff.
The court shall proceed to consider these issues ad seriatim.
(1) It is defendant’s contention, and its construction of the subject section, that, in enacting the same, it was the Legislature ’s intent to insulate students and purchasers from liability for unpaid dance instructions in cases wherein studios sought to recover therefor for breach of contract. It pursues its argument by claiming that said section does not give the student the right to a refund in cases wherein the student has waived the statutory enforceability of his provision to pay by voluntarily paying the price for his dance lessons, as the plaintiff has done in this case. It proceeds further by claiming any other construction given to this section would render it unconstitutional.
Defendant is indulging in mere casuistry.
"Whereas public policy has always recognized the rights of individuals to make contracts free of restraint by Government, new social concepts have brought into operation new principles, so that today Federal and State laws set many limitations on contracts involving consumers. None can question the Legislature’s authority to establish principles of public policy with respect to the execution and enforceability of contracts such as the ones under consideration here.
The statutory legislation became imperative by reason of the guile, deceit, shenanigans, and other artifices practiced and indulged in by vendors, franchisors, and entrepreneurs of like ilk in their dealings with the public and ultimate consumers which invariably resulted in the latter’s exploitations.
As this court sees it, the primary and basic intent of the Legislature in enacting the subject section was to protect the public from unconscionable and/or exploitative contracts whereby the naive, the gullible, and the unwary were made to pay exorbitant prices for lessons, the use of facilities, and other tangible goods.
The court finds the subject contracts not only contra bonos mores; that is, adverse to the public policy as intended by the *420 Legislature in enacting the subject section, but, in addition thereto, finds the “Tiffany Club ” membership contract for which this plaintiff paid the sum of $4,125 so exploitable in itself that it violates basic concepts of permissible conduct.
(2) Obviously under the provisions of this section, the purchaser, as a defendant, can successfully resist any actions instituted by a studio to recover for unpaid dance lessons predicated upon a breach of contract whose terms do not accommodate this section. It is this court’s opinion that the purchaser, as a plaintiff, has also the right to recover for “ unused ” dance instructions in instances where they have paid for same and have not taken the lessons. This right is inferred from the provision of the section if the legislative intent is to be accomplished.
In addition, it has been said that the proper instrument for changing the law as it is, and has been, is the Legislature, or the administrative branch of government making rules under delegated authority from the legislative branch. In general, Legislatures do a fair job of correcting past error but a poor job of anticipating the future. It is therefore illusory to suggest that the only remedy for victims of exploitation is the invocation of legislative enactment of laws against it.
Only the courts can provide a remedy.
The proper function of the judicial branch of government is not simply to interpret the law, as it may be coded. The common law is alive and well and is too vigorous to be embalmed in legal codes. The concept that the law is an ideal of justice for all, an ideal which contains the ability to change its forms and substance, if such change is necessary in the true administration of justice, is the concept that is called the common law. Thus the common law can amend itself to produce justice in areas where legislation is inadequate or impossible to be effective, bearing in mind at all times that “ For Justice, though she’s painted blind, is to the weaker side inclin’d ” (Hudibras, pt. iii, c. 3, 1. 709) .
(3) In resisting plaintiff’s claim, this defendant takes the stance that plaintiff may not recover absent actual proof of “ unused ” dance instructions. And further, and with respect to the “ Tiffany Club ” membership contract, it is its position that the activities and tangible goods therein provided were actually arranged and made available to the plaintiff although she elected to forego the same. The number of contracts signed by this plaintiff were numerous. It was her testimony that she always had unused dance instructions on previous contracts when she was asked to sign new contracts. This fact was corrobo *421 rated by the defendant’s supervisor. She further testified that her participation in the activities provided to members of the “ Tiffany Club ” was minimal. This fact was also practically admitted by this defendant’s supervisor.
It is the opinion of this court that, in order to avoid the interdiction of this section, it was incumbent upon the defendant affirmatively to plead and to adduce evidence to show how much it had “ earned ” under the contracts. It could have done so by testimony or other evidence reflecting how many dancing instructions were given to the plaintiff, and the plaintiff took, under the subject instruction contracts, and the cost to this defendant of arranging for and providing the activities and other tangible goods in which plaintiff actually participated and accepted under the “ Tiffany Club ” membership contract.
Not only did this defendant fail to so plead in its answer by way of avoidance, but also the record is entirely devoid of any such proof.
(4) The court now arrives at the significant issue in this case, and that is a determination of this defendant’s liability to the plaintiff, which she has predicated in the complaint on the provisions of section 394-c of the General Business Law.
It is this defendant’s contention that its relationship with New York Dance, Inc., was that of franchisor-franchisee and that the provisions of the invoked section which invests the plaintiff with this cause of action against the franchisor are applicable only to those contracts executed after July 1, 1968.
However, the court is of the opinion that the nomenclature with which this legal relationship is baptized by this defendant is not conclusively dispositive of the issue. Taken into consideration should be the manner, extent, and degree in which this defendant participated in this ‘ ‘ game of the name, ’ ’ the intended impact it had upon the general public and this plaintiff in particular, and the quantity and quality of the supervision it exercised and the regulation it maintained over the operation of the business being conducted in its name.
This court can take judicial notice, it believes, of the fact that the name “Arthur Murray” has been a universal byword in the art of dancing for decades. Its fame and magic are truly legendary. Numerous dance studios have sprung up all over the country, and many persons enroll therein for dancing instructions, being attracted thereto by the enchantment of the name ‘ ‘ Arthur Murray. ’ ’
Plaintiff had been taking dance instructions in the Arthur Murray Dance Studio since 1961. In the lobby of the premises *422 wherein is located the studio there was, and still is, a large plaque bearing the legend “ Arthur Murray School of Dancing.” By April of 1967 plaintiff had already completed all the dance courses to render her eligible for, and she did receive bronze, silver, and gold medals and a gold bar. One would think that she should have matriculated by that time, the gold bar being the indicia of ultimate accomplishment.
In April of 1967 she was asked to sign the first of the three contracts. It is significant to note that she was presented with the identical printed form of her previous contracts, the only change being that the name ‘‘ Arthur Murray, Inc. ’ ’ had been stamped out and the name “New York Dance, Inc.” rubber stamped over it. (The same is true of the two subsequent contracts.) Business was carried on as usual in the same studio, with the same instructors, the same supervisor, and the same sign in the lobby of the premises which advertised the studio as “ Arthur Murray School of Dancing.” There was one change. In the reception room of the studio an 8 foot by 10 foot diploma was hanged on its wall, containing the name “New York Dance, Inc. ” There was testimony to the effect that this defendant still dictated the method of dancing, formulated national advertisements in public media on behalf of the franchisee who complied with this defendant’s recommendations with respect to contracts signed with the students.
There was also testimony that all franchisees were compelled to honor any unused portion of dance lessons due students from other studios. Supervisors received remuneration for their services computed on base pay plus commissions on the gross intake realized on contracts with students. This defendant’s control over the operation was such that franchisees transmitted weekly reports of all contracts made with new students, the gross intake, and commissions or royalties computed thereon.
One of the. most interesting facets of this relationship was this defendant’s control over its supervisors and franchisees. It was such that it enabled it indiscriminately to transfer supervisors and franchisees from one studio to another. The last supervisor of the New York studio, Terry Leone, continued in the employ of this franchisee as such until the end of 1967, when he received a franchise for the defendant’s studio, first in Corpus Christi and then later another in Dallas. Mr. Bussell, the franchisee who supervised this defendant’s studio in New York as New York Dance, Inc., had been transferred from and had been the franchisee of another studio owned by this defendant in East Orange, New Jersey.
*423 The court is of the opinion that the control maintained by this defendant over its franchisees, and their transferability from one location to another, so transcends the ordinary and normal franchisor-franchisee relationship that, in effect, the franchisees became the alter egos of this defendant in the conduct and operation of its studios.
However, the nature of this control was only such as would insure it its pecuniary harvest. So otherwise lackadaisical was this control that it mattered not to it that contracts signed by students ‘ ‘ shall be valid and enforceable ’ ’ only if their terms and conditions accommodated those prescribed in section 394-b of the General Business Law. For example, although the “ Tiffany Club ” membership contract bore on its face the printed legend “ Not over $500,” it permitted its alter ego to execute this contract on its behalf for a sum far in excess of $500, with respect to which it received its weekly report and collected its royalties. Further, although the section prescribes a ceiling of $500, the printed legend on the first and third contracts was ‘ ‘ Not less than $500 — nor more than $2500. ’ ’ (Italics supplied.)
This defendant obviously disregarded the prescription of the section and, in the revealing light of experience, the specific risks taken thereby are disclosed by the hazards that ensued.
This court looks askance upon this defendant’s contention that, since the ‘ ‘ Tiffany Club ’ ’ contract did not provide for dancing instructions and that, since it 1 ‘ was something new instituted by New York Dance, Inc. ’ ’ (in its brief) it consequently should not be held to account.
Students ’ complaints with respect to ‘ ‘ Tiffany 'Club ’ ’ membership contracts signed with studios owned and operated by this very defendant in other locations have been entertained by the Federal Trade Commission and, after lengthy and numerous hearings, resulted in an order placing a ceiling of $1,500 on all contracts signed by this defendant.
The plea of franchisor-franchisee relationship should not be allowed to prevail when it would not advance justice but, on the contrary, accomplish a legal wrong.
‘ ‘ To subject this defendant to automatic liability in contracts made by franchised studios with their students (briefs this defendant) would make a continuation of a franchising system impossible and compel this defendant to restrict its business to dance instructions solely through company-owned studios.” Economic feasibility does not act to insulate or excuse this defendant’s negligible supervision over the conduct of its franchisees in the operation of its studios.
*424 If the court is to attain the objectives the Legislature envisioned (suprar), it cannot be required to confine the roadblock to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that the Legislature’s salutary purpose in enacting the section may not be bypassed with impunity.
After trial, judgment for the plaintiff against both defendants for the relief demanded in the complaint.
Ten days ’ stay.
The foregoing constitutes the decision of the court pursuant to statute.
“It is hoped that this decision is like the thunderbolt which falls on an inch of ground, but its light fills the defendant’s horizons. ’ ’